IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARIO LEE, PATRICIA LOPEZ, and AMY COAXUM, on behalf of themselves and others similarly situated, | § § § § | |
| *Plaintiffss*, | § § | |
| v. | § § | Civil Action No. 3:13-cv-02349-O |
| METROCARE SERVICES, | § § § | |
| *Defendant*. | § | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiffs Mario Lee, Particia Lopez, and Amy Coaxum ("Plaintiffs"), on behalf of themselves and similarly situated current and former employees of Metrocare Services ("Metrocare"), formerly known as Dallas County Mental Health Mental Retardation Center, file this First Amended Class Action Complaint complaining of Defendant Metrocare, and in support states as follows:

**NATURE OF ACTION**

1. Plaintiffss, on behalf of themselves and the Plaintiff class, bring this action to recover unpaid overtime compensation from the Defendant pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. §§201 et seq. Plaintiffs contend that Defendant improperly deprived them, as well as the Class, of overtime compensation to which they were entitled to pursuant to 29 U.S.C. §207(a).

## JURISDICTION AND VENUE

2. Jurisdiction is conferred on this Court by 29 U.S.C. § 216, which authorizes suit on FLSA claims in federal court.

3. Venue is proper in this Court under 28 U.S.C. § 1441(a).

## PARTIES

4. The named Plaintiffs are current or former non-supervisory employees of Defendant. They are or were employed in the position of "Service Coordinator." They have each consented to the filing of this action.

5. Defendant is a 501(c)(3) non-profit organization formerly known as the Dallas County Mental Health Mental Retardation (MHMR) Center, operating within its geographical boundaries located in Dallas County, Texas. It is a non-profit organization created under State law to provide mental health care services to Dallas County residents. Defendant is an "employer" as defined in 29 U.S.C. §203(d). It may be served via its counsel of record via ECF.

## CLASS ALLEGATIONS

6. Plaintiffs file this case as an "opt-in" class action as specifically allowed by 29 U.S.C. § 216(b). The class that Plaintiffs seek to represent may be described as follows.

> All non-supervisory, non-exempt employees of Metrocare Services (formerly known as the Dallas County Mental Health Mental Retardation (MHMR) Center) at any time since June 20, 2010.

Plaintiffs seeks to represent only those members of the above-described group who, after appropriate notice of their ability to opt in to this action, have provided consent in writing to be represented by the Plaintiffs as required by 29 U.S.C. § 216(b).

7.    This action is appropriate for class or collective action status because Defendant has acted in the same manner with regards to all members of the Plaintiff class.

## FACTUAL BACKGROUND

8.    At all times relevant to this action, Defendant has been subject to the requirements of the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.*

9.    For purposes of this action, the "relevant period" is defined as that period commencing on June 20, 2010 and continuing thereafter.

10.   Throughout the relevant period, Plaintiffs and the Plaintiff class members have been employed by Defendant in non-supervisory, non-exempt positions.

11.   Metrocare Services employs at any given time approximately seventy (70) employees in the position of "Service Coordinator." Due to the high turnover rate, Metrocare Services has employed approximately one hundred and fifty (150) Service Coordinators over the last three years.

12.   Job duties for Service Coordinators include meeting and working with consumers and their family members to gather information, assessing each consumer's needs, assessing the costs of care, preparing a plan of care, and identifying and implementing services to meet the consumer's needs. Service Coordinators do not personally deliver or administer health services to the consumers, but are responsible for planning and helping to obtain those services from third-party service providers. For all practical purposes, the job duties of Service Coordinators at Metrocare Services were the same as the "case manager" position.

13.   Although Metrocare Services divided Service Coordinators into approximately five separate teams, their job duties were essentially the same, and all of the teams reported to

Linda Thompson, the Rights Protection Officer, and more recently the Interim CEO. Payroll practices were the same for all Service Coordinators at any given time, and all of the Service Coordinators were based out of Metrocare Services' central offices at 1380 River Bend, Dallas, TX 75247, although they sometimes made use of satellite offices.

14. The job responsibilities of a Service Coordinator took approximately 50 to 60 hours per week to perform, depending on the work load in any particular week.

15. Until approximately 2008, Defendant paid Service Coordinators only their regular hourly rate, multiplied by forty hours per week – regardless of how many hours they actually worked during the week. Employees regularly worked more than 40 hours per week, including time spent entering notes about their customer calls, and time spent being "on call." Nonetheless, they were only paid for 40 hours of week. Defendant justified this practice by classifying the employees as "exempt" for purposes of the FLSA.

16. On February 8, 2007, however, the United States Department of Labor issued an Opinion Letter (FLSA 2007-7) stating that Defendant's "employees do not qualify for the administrative exemption and must be paid in compliance with the minimum wage and overtime requirements of the FLSA."

17. Upon receiving this letter, Defendant should have begun to pay its employees for all of the hours they worked, including overtime. It did not.

18. The initial reaction was to pay staff compensation time ("comp time") in lieu of an actual overtime payment. Instead of paying overtime, Defendant would give its employees P.T.O. hours - purportedly to be taken at a later date. The employees who were paid in PTO or "comp time," however, were strongly discouraged from actually taking that time off.

19. Although the Service Coordinators were supposed to be eligible to receive overtime, Metrocare Services would not pay overtime, and took steps to prevent timesheets or records that showed overtime hours from being turned in.

20. Defendant's then CEO, Dr. James Baker, and Comptroller Joe Corlew created a report that showed which non-exempt staff members recorded more than 40 hours in a work week. This program was subsequently used to identify and harass employees into changing their hours so as not to report overtime.

21. During the 2009-2012 timeframe, written complaints from staff began to surface about compensation. To a large extent, the complaints involved allegations that even though employees were non-exempt, their timecards were being changed by managers to reflect 40 hour work-weeks. One staff member wrote directly to the Chairperson of the Board of Trustees, Julie Noble, accusing the Business Operations Director Rolanda Williams of instructing her managers (the time-keepers) to pressure staff not to report overtime. Thus, the Board of Trustees was made aware of the problem.

22. Several Service Coordinators complained to Defendant's Human Resources Manager that Linda Thompson, and two managers under her (Wendall Owens and Diane Graham) were actively threatening employees not to turn in overtime hours. Thompson had supervisory authority over all of the Service Coordinators.

23. Thompson told Defendant's Human Resources Manager that she was requiring all Service Coordinators to deduct one hour for lunch, regardless of whether they worked through lunch.

24. Defendant utilized a computer program that flagged any timecards that showed more than 40 hours per week. Those timecards would then be forwarded to Linda Thompson,

the Deputy CEO at the time, for investigation. Thompson and other supervisors would tell employees that if they if could not do the job within 40 hours per week, "maybe this is not the job for you." Management would also tell employees that they "just had to get it done" within 40 hours. The employees understood this as threat to their jobs if they turned in overtime. As a result, they regularly worked several hours of overtime that were simply not recorded.

25. More recently, Metrocare Services went to an automated system which generates time records based on time spent in a computer program called "Psych Consult" which stored records of the various cases handled and visits to clients/consumers.

26. A second program was used to connect the Psych Consult software that the Service Coordinators used to input notes about their patient and family visits to the payroll system. The software tries to measure job performance to establish whether employees are performing sufficient work to justify being paid forty hours per week, and allocates a fixed amount of time for various types of entries into the Psych Consult system.

27. The software uses an estimate or average amount of time for meetings with family members and clients, but does not account for actual time, and does not give any credit for visits when a client or family member does not show up for the visit. Further, the software did not fully account for all time spent working for Metrocare Services. For example, it did not properly count the actual time driving to consumer houses to meet with them, or the time spent interviewing them, or group meetings or telephone calls with managers as compensable time. It also did not account for time spent manning the emergency pager, or on the "Connected Care" line.

28. Each Service Coordinator is required to spend a seven-day term answering the emergency pager. Pager duty requires responding to phone calls that come in after hours,

between 5:00 p.m. and 8:00 a.m.  Service Coordinators typically receive several calls per day, with many of the calls coming in very early morning hours, so that it disrupts normal sleep. Until recently, no compensation was paid for time spent on pager duty.  More recently, Metrocare Services has paid a flat $50 for the week spent "on call," but HR had received complaints that this lump sum amount was insufficient to compensate Service Coordinators for the actual time spent answering calls. HR Generalist Sam Clark brought this matter to the attention of CFO Kyle Munson.  His response was: "You're right, but we don't want to pay back wages."

29. During working hours, Metrocare Services also had Service Coordinators staff a referral line called the "Connected Care" line for 3 ½ hour shifts.  Service Coordinators had to work a shift on the Connected Care help line every 45 to 60 days.  They were not allowed to do other work while staffing the Connected Care line, and could not get credit for the time spent doing this on the Psych Consult software, so that the time was not counted for purposes of overtime.  Likewise, there was no adjustment to their weekly or monthly quota (the "bench mark") to reflect time spent answering the Connected Care telephone.  Despite complaints, Linda Thompson said that she would not hire anyone else to perform the job. Metrocare Services knew that requiring service on the Connected Care line was likely to result in the working of unreported overtime in order to complete the required bench marks.

30. Corlew used a second program to estimate compensable mileage and travel time to onsite visits using Google Maps, but the software does not account for time delays due to traffic, and therefore suppresses the amount of reported time.

31. In addition to their normal compensation, Defendant participated in a §403(b) retirement savings plan, which entailed a 50% match of contributions up to a certain level.  The

lost overtime compensation has, therefore, also potentially cost Plaintiffs and the class members additional retirement savings based on the matching contributions from Defendant.

## STATEMENT OF CLAIM

32. By the foregoing acts and ommissions, the Defendant violated Plaintiffs' and the Class members' rights under the FLSA and implementing regulations.

33. Plaintiffs seek, on behalf of themselves and the Plaintiff Class members, an amount of backpay equal to the underpayment of overtime during the relevant period, together with an equal amount as liquidated damages, attorney's fees, and pre- and post-judgment interest at the highest rate allowed by law.

34. Plaintiffs respectfully request that the Court apply the doctrine of equitable tolling from the date of the filing of the Original Class Action Complaint (June 20, 2013). Defendant has created an atmosphere of fear and intimidation by threatening the termination of employees who reported overtime as well as Human Resources employees who advocated compliance with the law, and thereby discouraged the Class from pursuit of legal relief. The consequence of any delay caused by the Defendant in the production of accurate mailing information for the potential opt-ins, or otherwise improperly delaying the granting of Plaintiffs's anticipated Motion for Conditional Class Certification, is that the process of notifying the potential Plaintiffss of this action and providing them the opportunity to opt-in will be delayed through no fault of the potential opt-in Plaintiffs. Under these circumstances, it would be appropriate for this Court to toll the statute of limitations for all potential opt-ins and allow all current and former employees of Defendant to opt-in if they were employed by Defendants at any time from three years prior to the date of the filing of this Complaint through the present. *See, e.g., Irwin v. Dep't of Veterans*

*Affairs*, 498 U.S. 89, 96 (1990), *citing Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984) (where being unjustly penalized). *See also, Partlow v. Jewish Osphans' Home of S. Cal., Inc.*, 645 F.2d 757, 760 (9th Cir.1981) (tolling of FLSA statute permissible under equitable tolling doctrine); *Cada v. Baxter Healthcare Corp.*, 920 F.2d 446, 451 (7th Cir. 1990) (equitable tolling generally "permits a Plaintiff to avoid the bar of the statute of limitations if despite all due diligence he is unable to obtain vital information bearing on the existence of his claim.").

## PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully request that Defendant be cited to appear and answer herein; that this action be certified as an opt-in class action as allowed under the FLSA, with notice being given to all potential Plaintiffs of their right to opt in; and that upon final hearing, the Court grant Plaintiffs and Plaintiff Class members who have given their consent to suit relief as follows:

    A.    Declare that Defendant has violated the Fair Labor Standards Act, specifically 29 U.S.C. §207, by failing to pay the Plaintiffs and Plaintiff Class members overtime at one and one half times their regular hourly rate for all hours in excess of 40 worked during each seven day work period.

    B.    Enjoin Defendant from failing to pay Plaintiffs and Plaintiff Class members at one and one half times their regular hourly rates for all hours in excess of 40 worked in each seven day work period.

    C.    Order Defendant to pay each Plaintiff and Plaintiff Class member the difference between what each should have received for overtime hours during the relevant period and what each was actually paid, together with an equal amount as liquidated damages.

D. Order Defendant to pay each Plaintiff and Plaintiff Class member pre-judgment interest for all backpay amounts awarded.

E. Order Defendant to pay Plaintiffs' reasonable attorney fees and costs pursuant to 29 U.S.C. §216(b).

F. Order Defendant to pay post-judgment interest at the highest lawful rate for all amounts, including attorney fees, awarded against Defendant.

G. Order all further relief, whether legal, equitable or injunctive, as may be necessitated to effectuate full relief to the Plaintiffs and Plaintiff class.

Respectfully submitted,

KILGORE & KILGORE, PLLC

By: */s/ John H. Crouch, IV*
JOHN H. CROUCH
State Bar No. 00783906
ASHLEY E. TREMAIN
State Bar No. 24066209

KILGORE LAW CENTER
3109 Carlisle
Dallas, TX  75204
(214) 969-9099 - Telephone
(214) 953-0133 – Fax

**ATTORNEYS FOR PLAINTIFFS**

### CERTIFICATE OF SERVICE

On July 18, 2013, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel and/or *pro se* parties of record electronically or by another manner authorized by Federal rule of Civil Procedure 5 (b)(2).

*/s/ John H. Crouch, IV*
John H. Crouch, IV